THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM LEMMON, Respondent, *v.* THOMAS L. FEITNER et al., as Commissioners of Taxes and Assessments of the City of New York, Appellants.

<table>
<tr><td>167</td><td>1</td></tr>
<tr><td colspan="2">e 77 AD¹356</td></tr>
<tr><td colspan="2">j 77 AD¹359</td></tr>
<tr><td colspan="2">j 77 AD²360</td></tr>
</table>

1. TAX — NON-RESIDENT'S SEAT IN NEW YORK STOCK EXCHANGE NON-TAXABLE. A membership or seat in the New York Stock Exchange is not personal property within the meaning of the Tax Law (L. 1896, ch. 908, § 2, subd. 4), and if owned by a resident of the state would not be taxable thereunder, and since under section 7 it is taxable only as personal property "to the extent" as if owned by a resident, it is not taxable when owned by a non-resident.

2. VALUE OF A SEAT IS CAPITAL INVESTED IN BUSINESS. The value of a seat in the New York Stock Exchange is capital invested in business in the state, but is not taxable since the statute does not cover it.

*People ex rel. Lemmon* v. *Feitner*, 56 App. Div. 280, affirmed.

(Argued March 11, 1901; decided April 30, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 15, 1901, which reversed an order of Special Term dismissing a writ of certiorari to review an assessment by the tax commissioners of the city of New York of the personal estate of the relator for the year 1899, and vacating the assessment.

The facts, so far as material, are stated in the opinion.

1

*John Whalen,* Corporation Counsel (*James M. Ward* of counsel), for appellant. All that is necessary to subject a non-resident to assessment for purposes of taxation is that he should have a specific sum invested in business. It is not essential that the thing to be taxed should be the same kind of property taxable to a resident. (*Matter of Austin* v. *Brigham*, N. Y. L. J. May 5, 1897; L. 1855, ch. 37.) Under section 7 of chapter 908 of the Laws of 1896, as under chapter 37 of the Laws of 1855, it is the actual value on assessment day of the capital of a non-resident invested in business which fixes the value for purposes of taxation. (*People ex rel.* v. *Barker*, 147 N. Y. 31.) As the New York Stock Exchange is an association organized for the purpose of transacting business, and as a condition precedent to the right to the transaction of business, as a member of the association, the payment of a sum of money is required in the case of a non-resident, a membership in the exchange becomes assessable as "a sum in any manner invested in business" under the provisions of the act of 1855, or as "capital invested in business" under the provisions of the Tax Law. (*Hitt* v. *Crosby*, 26 How. Pr. 413.)

*Lewis Cass Ledyard* for respondent. The New York Stock Exchange is a voluntary, unincorporated association of individuals engaged in business in the city of New York as brokers in stocks, bonds and other securities. The exchange itself does not do any business and membership therein does not constitute property. (*Belton* v. *Hatch*, 109 N. Y. 593; *In re Sutherland*, 6 Biss. 526; 23 Fed. Cas. 453; *Pancoast* v. *Gowen*, 93 Penn. St. 66; *Thompson* v. *Adams*, 93 Penn. St. 55; *Lowenberg* v. *Greenebaum*, 99 Cal. 162; *Barclay* v. *Smith*, 170 Ill. 349.) The intangible right incident to membership in the New York Stock Exchange does not fall within any of the recognized definitions of property. (*Wynehamer* v. *People*, 13 N. Y. 396; *Ayers* v. *Lawrence*, 59 N. Y. 198; *Sherman* v. *Elder*, 24 N. Y. 384; *Bruch* v. *Carter*, 32 N. J. L. 561; *Toledo Bank* v. *Bond*, 1 Ohio St. 623; *Kuhn* v. *Common Council*, 70 Mich. 537.) Unless it is clearly made

1901.]      People ex rel. Lemmon v. Feitner.      3

N. Y. Rep.]        Opinion per Bartlett, J.

to appear that membership in the New York Stock Exchange constitutes, within the language of the Tax Law, "capital invested in such business as personal property," the assessment in the present case cannot be sustained. (*U. S.* v. *Wigglesworth*, 2 Story, 373; *Bailey* v. *Clark*, 21 Wall. 286; *Lyon* v. *Zimmer*, 30 Fed. Rep. 410; *Smith* v. *Mayor, etc.*, 68 N. Y. 555; *Borrell* v. *Mayor, etc.*, 2 Sandf. 552; *People ex rel.* v. *Comrs. of Taxes*, 19 Hun, 464.)

Bartlett, J. The relator is, and for many years has been, a resident of New Jersey and was such on the second Monday of January, 1899; during all that time he transacted business in the city of New York as a broker in stocks, and has been a member of the New York Stock Exchange since the year 1872, having paid for his membership at that time about the sum of four thousand dollars. On the second Monday of January, 1899, he was assessed on his said membership at a valuation of twenty thousand dollars. This assessment is based on chapter 908 (§ 7) of the Laws of 1896, known as the Tax Law, which reads as follows: "Non-residents of the State doing business in the State, either as principals or partners, shall be taxed on the capital invested in such business, as personal property, at the place where such business is carried on, to the same extent as if they were residents of the State."

The question presented for our determination is whether the value of a seat in the New York Stock Exchange, owned by a non-resident member, doing business in this state, is to be regarded as capital invested in business, as personal property, within this state. The section quoted, while it has been subjected to some verbal changes, is a substantial re-enactment of the Laws of 1855, chapter 37, § 1. (*People ex rel. Armstrong Cork Co.* v. *Barker*, 157 N. Y. 159.)

In the act of 1855 non-residents were taxed "on all sums invested in any manner in said business, the same as if they were residents of this state," and in the present Tax Law they are taxed "on the capital invested in such business, as personal property, at the place where such business is carried on."

We have been cited to a large number of cases in this and other states, and the Federal courts, which deal with the general question as to the rights of creditors to the seat of a debtor in various business exchanges. We shall content ourselves, however, with an examination of the rights and liabilities of the relator under the rules of the New York Stock Exchange and such cases as have settled the law relating thereto in this state.

The petition sets forth in part the constitution and by-laws of the New York Stock Exchange, as existing at the time the relator was admitted to membership, and also as modified prior to the year 1899. For the purposes of this case it is only necessary to consider a few of the salient features of these instruments. The New York Stock Exchange is a voluntary unincorporated association composed of more than one thousand members, many of whom are non-residents but engaged in business in the city of New York. The principal purposes and objects of the association are the affording to members facilities for the transaction of business as brokers in stocks, bonds and other securities, the providing for a convenient exchange or salesroom for the transaction of such business, and the maintenance of rectitude and honorable dealings between its members in their business transactions. The governing committee appoints a standing committee from its own members known as the " Committee on Admissions." A candidate for admission is elected to his seat in the exchange by a two-thirds vote of this committee, which consists of fifteen members. A member has the right to sell his membership by submitting the name of the proposed purchaser to the standing committee, and if it approves of the transfer it may be made, provided the member selling has no unsettled contracts. When a member dies his membership may be sold by the secretary of the committee on admissions, and, after satisfying the claims of the members of the Stock Exchange, he is to pay the balance to the legal representatives of the deceased. There are also provisions for the disposition of the seat of a member who has been deprived of his mem-

bership by the act of the governing committee, which need not now be considered.

The relator contends that his membership is purely a personal privilege, and the value thereof cannot be regarded as a sum invested in business in this state.   If it be admitted that a seat in the exchange is in a certain sense personal property, it does not advance the argument in support of the contention that its value is to be regarded as invested in business conducted by the owner.   The New York Stock Exchange transacts no business as such in the buying and selling of stocks. Its main object, as already stated, is to afford its members the facility for the transaction of business by providing them with a convenient exchange or salesroom.   The business therein transacted is that of the individual members, and the conveniences afforded by the exchange renders it practicable to carry on with speed and safety the enormous dealing in stocks and other securities incident to the great money center of the country.

It may be well, however, to ascertain to what extent this court has decided that a seat in an exchange is personal property.   In *Platt* v. *Jones* (96 N. Y. 24) it was held that a membership in the New York Stock Exchange was, in a certain sense, property, and that it passed to the assignee in bankruptcy of the owner.   After the discharge of the debtor he continued to do business as a member of the exchange, and the assignee sought in this action to compel him to execute and deliver a proper transfer of his seat or membership.   This court held that the action was premature, as it did not appear that the assignee had applied to the exchange to have his rights recognized or that the exchange had denied his rights, or that he had nominated any person to the exchange in the place of the defendant or attempted to have any one elected.   It was further suggested that the right of the plaintiff assignee was in no wise prejudiced by the fact that the exchange saw fit to allow this member to exercise his privileges after such rights as he possessed had passed to the assignee in bankruptcy, and that the exchange, on due application, might permit the per-

son nominated by the assignee to become a member on con-
forming to its rules. Judge Earl, in writing for this court,
said : " There can be no doubt that a seat or membership in
the exchange is, in a certain sense, property. It has great
value to the owner or possessor, and may, under conditions
prescribed in the constitution and by-laws, be transferred and
transmitted and converted into money." (See cases cited.)
" The question as to the character of the property of such a
seat is so fully discussed in the authorities cited that nothing
more is necessary to be added."

In *Powell* v. *Waldron* (89 N. Y. 328) it was held that a
membership in the New York Cotton Exchange was property
and as such passed to a receiver appointed in supplementary
proceedings on an execution against the owner, and that the
receiver had a right to redeem the seat when it had been
pledged by the judgment debtor as collateral for a loan. The
transfer of a seat in the Cotton Exchange is not subject to the
same restrictions as in the New York Stock Exchange ; in
the former a transfer may be made without the action of any
committee or consent of the exchange, to any fellow-member
or any member-elect, subject to certain restrictions that are
not material to consider.

Judge Finch, writing for the court, said : " We think the
right of the judgment debtor to a seat in the Cotton Exchange
was property. That it had value was proved and is conceded ;
and that it could be transferred to a certain class of purchasers,
under prescribed rules and conditions, is also established.
The defendant took it as collateral to the note of Robbins and
held it as security for that debt and thereby plainly treated
it as valuable property. Although of a character somewhat
peculiar, its use restricted, its range of purchasers narrow, and
its ownership clogged with conditions, it was, nevertheless, a
valuable right, capable of transfer and correctly decided to be
property. (*Hyde* v. *Woods*, 94 U. S. 524 ; *Ritterband* v. *Bag-
gett*, 10 J. & S. 556 ; *Grocers' Bank* v. *Murphy*, 11 Week. Dig.
538 ; *In re Ketcham, a Bankrupt*, Daily Reg., Feb. 9, 1880.) "

Judge Choate, while sitting in the United States District

Court for the southern district of New York, held that a seat in the New York Stock Exchange was property which passed to the assignee in bankruptcy. (*In re Ketchum*, 1 Fed. Rep. 840.)

We have been cited to the case of *Belton* v. *Hatch* (109 N. Y. 593) as having a bearing on the subject under consideration. In that case a member had been expelled from the New York Stock Exchange, and his assignee sued the exchange to recover the proceeds received by it from a sale of the membership or seat involved. It was held that these proceeds did not belong to the expelled member, but to the exchange and might be disposed of as it directed.

This court has thus held that a seat in the New York Stock Exchange is, in a certain sense, property, and possessed of considerable value, and that an assignee in bankruptcy takes such interest as the owner has and may realize thereon if the governing committee decides to recognize and seat the proposed transferee.

We have been cited to no case where the Stock Exchange has admitted to membership the purchaser at a judicial sale. The court has no power to compel such action and the probability of a creditor reaching a favorable result by selling the seat of a member is, to say the least, exceedingly remote.

The record before us discloses that where a member voluntarily contracts to sell his seat it is always upon the condition that the agreement shall be void unless the proposed transferee is elected by the admissions committee.

This membership, while in a certain sense personal property "clogged with conditions," is clearly not such personal property as is taxable under the laws of this state.

The Tax Law (Chap. 908, Laws of 1896, § 2, subd. 4) defines personal property as follows: "The terms 'personal estate,' and 'personal property,' as used in this chapter, include chattels, money, things in action, debts due from solvent debtors, whether on account, contract, note, bond or mortgage; debts and obligations for the payment of money due or owing to persons residing within this state, however secured or where-

ever such securities shall be held ; debts due by inhabitants of this state to persons not residing within the United States for the purchase of any real estate; public stocks, stocks in moneyed corporations, and such portion of the capital of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate."

Section three of the Tax Law, in defining the property liable to taxation, says : " All real property within this state, and all personal property situated or owned within this state, is taxable unless exempt from taxation by law." The Tax Law then provides for the taxation of non residents in section seven, already quoted.

The counsel for the appellants states in his brief as follows : " In order to tax the property of citizens of this state that property, under the provisions of the Tax Law, must be either real or personal (Section 3, chapter 306 of the Laws of 1898). And unless the property sought to be taxed comes within the definitions of the statute defining real and personal property, it is, of course, not taxable. It is clear that property of the nature of a membership or seat in the Stock Exchange is not within the definitions of subdivision four of section two of chapter 908 of the Laws of 1896, and, therefore, would not be assessable for purposes of taxation to a resident owner."

This admission is most significant and it brings us to the consideration of the remaining question in the case, whether a non-resident member of the New York Stock Exchange can be assessed on the value of his seat, although a resident member is not taxable.

The language of section seven of the Tax Law is that non-residents shall be taxed " to the same extent as if they were residents of the state."

The learned Appellate Division, in commenting on this language, said : " That means necessarily that he is to be taxed upon the same sort of property, and that property is to be valued at the same rate as if it belonged to a resident."

We are of opinion that the language of the statute admits of no other construction.

The counsel for the appellants challenges this construction and cites *People ex rel. Thurber, Whyland Co.* v. *Barker* (141 N. Y. 118) as establishing a contrary view. It was there held that foreign corporations doing business in this state are to be regarded as non-residents under the statute and taxable on all sums invested in their business. Also, that a person or corporation so liable to assessment and taxation is not entitled to a deduction of debts. Judge PECKHAM's opinion is very explicit and does not support the appellants' argument. The learned judge points out that debts are not deductible, as it is to be assumed that the non-resident will have all his deductions adjusted at the place of his domicile. He then states as follows : " In using the expression ' the same as if they were residents of this state' we do not think it was intended that exceptions were to be allowed here the same as if the party were a resident, or that deductions from the sum should be made as if that were the case. It means, as it seems to us, that the sum invested in any manner in business in this state should be assessed in the same manner and form as a resident would be assessed."

The relator is liable to be assessed on his capital invested in business in this state in the same manner and form as a resident would be assessed. Neither the resident nor the non-resident can be taxed on personal property other than that which is declared to be such by the Tax Law.

It being admitted that the definition of personal property as contained in the Tax Law does not include a membership in the New York Stock Exchange, it would seem to be decisive of this case. We are, however, of opinion that, without regard to the point just considered, the value of a seat in the New York Stock Exchange is not capital invested in business in this state. A broker in the purchase and sale of stocks and bonds, who neither receives nor delivers stocks, but merely conducts the transaction on the floor of the exchange, giving up the name of the purchaser or seller to his principal, is in the position of one rendering services and cannot be regarded as conducting a business in which capital is invested in the

legal sense.    The money that he has paid for his membership or seat is for the mere facility to transact his particular business and to surround it with such safeguards of rectitude and honorable dealing as tend to promote both rapidity and safety in his transactions.    It is apparent that the value of this seat or membership, while enabling the relator to carry on his business with facility and safety, does not fall within any of the definitions of invested capital.

In *Bailey* v. *Clark* (88 U. S. [21 Wall.] 286) the Supreme Court of the United States defined capital to mean "property taken from other investments or uses and set apart for and invested in the special business, and in the increase, proceeds or earnings of which property beyond expenditures incurred in its use consist the profits made in the business."

In *Lyon* v. *Zimmer* (30 Fed. Rep. 410) is found this definition : " Capital is the fund dedicated to a business to support its credit, to provide for contingencies, to suffer diminution from loss, and to derive accretion from gains and profits."

In Bouvier's Law Dictionary (Vol. 1, p. 283) capital is defined as " The sum of money which a merchant, banker or trader adventures in any undertaking, or which he contributes to the common stock of a partnership."

In *McLean* v. *Jephson* (123 N. Y. 146), which was a construction of the act of 1855, taxing non-residents " on all sums invested in any manner in said business," this court said : " To authorize an assessment under this statute, it is essential that the person assessed shall in fact have money invested in a business carried on by him in this State, either as a principal or partner."

Webster defines " invest " as " To lay out money or capital in business, with a view of obtaining an income or profit ; as to invest money in bank stock."

The general understanding of the term " investment " is taking a given sum of money and placing it where it will produce an income, either as the profit of capital in a commercial venture, or in the form of interest earned by bonds, stock and other securities.

The sum which the relator paid in order to gain admission to the floor of the New York Stock Exchange, where he might meet from time to time a thousand other brokers having stocks to purchase or sell, is in no proper legal sense an investment of capital in a business that he was conducting in the state of New York upon which he expected to reap the profits of a successful venture.

The order appealed from should be affirmed, with costs.

VANN, J. I concur in the result because a seat in the New York Stock Exchange is not personal property under the somewhat restricted definition of the Tax Law (L. 1896, ch. 908, § 2). If owned by a resident it would not be taxable according to that definition, and when owned by a nonresident, it is taxable only " as personal property * * * to the same extent " as if owned by a resident. (Id. § 7.)

I do not concur, however, in the conclusion that " the value of a seat in the New York Stock Exchange is not capital invested in business in this state." Money is capital, and when money is invested in facilities or appliances to do business with, it is capital invested in the business to which the facilities or appliances are essential in order to carry it on successfully. Thus, the money expended for the library of a lawyer, the implements of a surgeon, the patent rights of a manufacturer, or the copyrights of a publisher, is capital invested in business, because the business cannot be carried on without it. Whenever one has to buy some right in order to carry on a certain business, the sum so expended is capital invested in that business. Money is invested in business when it is invested in the means of carrying on business. Membership in the New York Stock Exchange is essential to the business of a broker, such as the relator carried on, and the money that it cost is capital invested in the business. The test is, could the business be as successfully carried on without it? The exchange is a great market for the sale of property of a certain kind, such as the relator dealt in, and right of access to the market is necessary in order to deal with any success in

that kind of property. Without that right the business of a broker would be so restricted as to be unworthy of the name. The relator, therefore, could not have carried on his business with substantial profit, or as he has carried it on, without investing enough capital to procure the rights and facilities afforded by membership in the Stock Exchange. His business would necessarily have been limited and insignificant unless he had made that investment, which, when made, as we have held, was property. (*Platt* v. *Jones*, 96 N. Y. 24.) Capital is invested when property is purchased with it, and capital is invested in business when it is expended in the purchase of property that is essential in order to carry on that business. While the relator bought and sold securities for others, he could have bought and sold for himself, and, if his sole business was buying and selling for third persons, he could not have carried it on without access to the market. The money used by him to buy his seat was neither thrown away nor given away, but was paid for property of great value, which was the main instrumentality for carrying on the business in which he engaged. It is difficult for me to see what was done with the money unless it was invested.

While the necessity of an election to membership may affect the value of a seat in the exchange, it has no bearing upon the question whether the money used to purchase a seat is capital invested in business. It may be that some men cannot effectively purchase the right to do business in the exchange, but that does not alter the fact that it requires the investment of capital to procure the right by all who succeed in getting it. While one must pay what a seat is worth, and also obtain consent of the governing committee before he can become a member, the sum paid is capital notwithstanding something else is required to effect the purchase. If consent were all, as is the case with social clubs, no capital would be required, but it is not all, for more than $50,000 must be paid for the right to do business in the exchange, even if consent is obtained. While the form of the investment is peculiar, it is property that must be had in order to carry on the business of a broker.

It is not a mere personal privilege, for it has a market value and can be bought and sold, although transfers are hampered somewhat by reasonable conditions, designed to maintain the moral character and business standing of the members.

I think the value of the seat of the relator is capital invested in business, but that it is not taxable, because the taxing statute does not cover it.

GRAY and WERNER, JJ., concur with BARTLETT, J.; VANN, J., concurs in memorandum, with whom PARKER, Ch. J., MARTIN and CULLEN, JJ., concur.

Order affirmed, with costs.