---

(77 App. Div. 355.)

### In re HELLMAN'S ESTATE.

(Supreme Court, Appellate Division, First Department.　December 12, 1902.)

1. TRANSFER TAX—STOCK EXCHANGE MEMBERSHIP.

 A stock exchange membership, not being personal property, as defined by the tax law (Laws 1896, § 2, subd. 5), is not within sections 220, 221, imposing a tax on the transfer of real and personal property.

 Hatch and Patterson, JJ., dissenting.

Appeal from surrogate's court, New York county.

In the matter of determining the transfer tax on the estate of Theodore Hellman, deceased.　From an order of the surrogate's court affirming a previous order of said court which assessed the amount of the transfer tax, the executors appeal.　Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, AND LAUGHLIN, JJ.

George W. Seligman, for appellants.
Edward H. Fallows, for respondent.

INGRAHAM, J.　The facts upon which the question in this case is to be determined are stated in the opinion of Mr. Justice HATCH, and it must be controlled by the provisions of the tax law (chapter 908, Laws 1896).　By subdivision 5 of section 2 of that act it is provided that:

"The terms 'personal estate' and 'personal property' as used in this chapter include chattels, money, things in action, debts due from solvent debtors, whether on account, contract, note, bond or mortgage; debts and obligations for the payment of money due or owing to persons residing within this state, however secured, or wherever such securities shall be held; debts due by inhabitants of this state to persons not residing within the United States for the purchase of any real estate; public stocks, stocks in moneyed corporations, and such portion of the capital of incorporated companies, liable to taxation on their capital as shall not be invested in real estate."

Section 220 of the act provides that:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over or of any interest therein or income therefrom."

Section 221 provides that:

"When the property or any beneficial interest therein passes by any such transfer or for the use of any father, mother, husband, wife, child, brother, sister, * * * such transfer of property shall not be taxable under this act, unless it is personal property of the value of ten thousand dollars or more, in which case it shall be taxable under this act at the rate of one per centum."

These two provisions, under which the tax has been imposed in this proceeding, are a part of the chapter which contains the definition in subdivision 5 of section 2 to which attention has been called, and I think that property upon which a tax can be imposed under sections 220 and 221 of the act must be property as defined by subdivision 5 of section 2 of the act. In the case of People v. Feitner, 167 N. Y. 1, 60 N. E. 265, 82 Am. St. Rep. 698, the court of appeals, in construing section 2 of the tax law, held that the definition of "personal property," as contained in the tax law, does not include a membership in the New York Stock Exchange. In that case Judge Vann, writing for a majority of the court, said that a seat in the New York Stock Exchange is not personal property, under the somewhat restricted definition of the tax law (Laws 1896, c. 908, § 2); that, if owned by a resident, it would not be taxable according to that definition, and when owned by a nonresident it is taxable only as personal property to the same extent as if owned by a resident. If a seat in the stock exchange, or the money invested in such a seat, is not taxable because not within the definition of personal property as contained in the tax law, and which is applicable to the provision under which this tax is imposed, then it seems necessarily to follow that a transfer of that seat, or right to the seat, by the death of a holder, is not a transfer of personal property which is taxable. Assuming that the money invested in this seat in the stock exchange was property of the testator before invested in the purchase of the seat, when invested in that species of property it was not subject to taxation. When the owner of the seat died, there passed to his executors a right to the seat in the stock exchange. Whether or not that would be of any value depended upon the consent of the stock exchange to its transfer. It was not then money, or a right to obtain money, but a right to a seat in the exchange, which was subject to be transferred with the consent of the exchange. The fact that the exchange subsequently consented to a transfer of this right to a seat did not change the character of the right that was owned by the decedent, and which passed upon his death to his. personal representatives. All that the personal representatives acquired upon the death of the decedent was this right to a seat in the exchange, which had belonged to the decedent, and been used by him, during his life; and that right the court of appeals have expressly held was not within the definition of personal property as used in the tax law. To say that what passed to the personal representatives of the decedent was "the capital invested in the seat" seems to be inconsistent with the nature of the right that passed to his personal representatives upon his death. What was transferred was the right that the decedent had to his seat, subject to a transfer by complying with the rules of the exchange; and it was no more the capital

invested in the purchase of that seat that passed by this transfer than is real estate passing upon the death of a decedent a transfer of the capital invested in the real estate. What was owned by the decedent was the seat itself, and there vested in the personal representatives that right which, by the constitution and by-laws of the exchange, it recognized as existing in the personal representatives of a deceased member. If a member had purchased a seat just before his death, and paid for it $5,000, and its value at the time of his death was $65,000, it would hardly be said that what passed to the personal representatives was the $5,000 which he invested. In this proceeding there is no evidence as to what capital the deceased had invested in the purchase of this seat in the exchange, and the order does not purport to tax that capital invested, but imposes a tax upon the value of the right that the personal representatives acquired by the transfer of the seat subject to the rules of the exchange. That a seat in the exchange is property, and that the legislature would have power to impose a tax upon the transfer of such property, is conceded; but the legislature, in defining personal property which is taxable under the tax law, has not included a right to a seat in the exchange as property that shall be taxable, and for that reason the court below had no authority to impose the tax. In re Glendenning's Estate, 68 App. Div. 125, 74 N. Y. Supp. 190, affirmed in 171 N. Y. 684, 64 N. E. 1121, related to a tax imposed upon a transfer prior to the passage of the tax law, and under the act in force prior to that time, and is not in point.

The order should be reversed, with $10 costs and disbursements, and the proceeding dismissed, with costs.

VAN BRUNT, P. J., and LAUGHLIN, J., concur.

HATCH, J. (dissenting). Theodore Hellman died testate, a resident of the city of New York, on the 9th day of October, 1901. His will was duly admitted to probate, and letters testamentary were duly issued to Frances Hellman and Isaac L. Seligman. An appraisal of the property of the decedent was duly had for the purpose of arriving at the amount of property subject to taxation under the taxable transfer act. The decedent was a member of the New York Stock Exchange at the time of his death, and the appraiser, in his report, specified, among other personal property, that the decedent at the time of his death was the owner of a seat in the New York Stock Exchange, which was of the value of $65,000, and was subject to taxation. This report was confirmed by an order of the surrogate of New York county, and from the order so made the executors appealed to the surrogate's court of New York county, and sought to set the same aside, upon the ground that a seat in the New York Stock Exchange was not subject to a transfer tax. The order appealed from was affirmed by the surrogate's court by an order made and entered on the 8th day of October, 1902, and from the order so made this appeal is taken.

It was decided by the court of appeals in People v. Feitner, 167 N. Y. 1, 60 N. E. 265, 82 Am. St. Rep. 698, that a seat in the New York Stock Exchange was not personal property under the restricted

definition of the tax law (Laws 1896, c. 908, § 2, subd. 4, as amended
by Laws 1901, c. 490). If, therefore, the same rule is to be applied to
the provisions of the transfer tax law, it would necessarily follow that
this species of property is not subject to a tax thereunder. It was
held, however, in Re Glendenning's Estate, 68 App. Div. 125, 74 N. Y.
Supp. 190, that such rule was not applicable to the provisions of the
transfer tax law, and that a succession to the amount represented
thereby was subject to taxation thereunder. This decision was af-
firmed on appeal. 171 N. Y. 684, 64 N. E. 1121. The last decision
is conclusive of the right to tax, unless the statute in respect thereto
has been changed.

It is claimed, however, that the present tax law was not the subject
of construction in the last-named case; that, while the decision was
rendered after the revision of the tax law in 1896, yet in fact the
decedent died in 1893, and the question of liability of the property to
the succession tax was determined under the taxable transfer act of
1892; that the revision of 1896 worked a radical change in the pro-
visions of the taxable transfer law; and that by its terms this property
is exempted from the operation of such law. So far as material to the
question presented by this appeal, the provisions of law covering the
subject are as follows:

"Sec. 220. Taxable Transfers. A tax shall be and is hereby imposed upon
the transfer of any property, real or personal, of the value of five hundred
dollars or over, or of any interest therein or income therefrom, in trust or
otherwise, to persons or corporation not exempt by law from taxation on
real or personal property, in the following case.    *    *    *

"Sec. 221. Exceptions and Limitations. When the property or any beneficial
interest therein passes by any such transfer to or for the use of any father,
mother, husband, wife, child, brother, sister,    *    *    *    such transfer of prop-
erty shall not be taxable under this act, unless it is personal property of the
value of ten thousand dollars or more, in which case it shall be taxable
under this act at the rate of one per centum.    *    *    *"

"Sec. 242. Definitions. The word 'estate' and 'property,' as used in this ar-
ticle, shall be taken to mean the property or interest therein of the testator,
intestate, grantor, bargainor, or vendor, passing or transferred to those not
herein specifically exempted from the provisions of this article, and not as
the property or interest therein passing or transferred to individual legatees,
devisees, heirs, next of kin, grantees, donees or vendees, and shall include all
property or interest therein, whether situated within or without this state."

By virtue of the provisions of section 220 the tax is imposed upon
the transfer of any property, real or personal. Section 242 defines the
words "estate" and "property" as used in the article. So defined, it
is taken to mean the property, or interest therein, of the testator,
passing or transferred to the successor thereof, when not exempted
by virtue of some provision of the article. It has been decided that
the tax imposed under this article is a tax upon the succession. In
re Bronson, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St.
Rep. 632; In re Vanderbilt, 172 N. Y. 694, 64 N. E. 756. If the
transfer is of the seat in the stock exchange, then within the decision
in People v. Feitner, supra, it is not subject to the tax; but if it is
money, or proceeds of the sale of the seat, then it would seem to be
property within the definition of the transfer tax law. In the latter
case a majority of the court held that the money which was invested.

in the seat constituted capital invested in a business. Clearly, it was property of the testator before the time that he invested it in this form, and, if it had descended in that form, the successor in interest would have taken it subject to the payment of the tax. While invested, by reason of the restricted character of the tax law, and solely for the purpose of taxation, it was regarded as exempt therefrom, for the reason that it was not embraced therein; but that it constituted property in a sense limited only by the conditions which attached to it has never been denied by any court. The persons succeeding to the interest in the present case do not succeed to the seat as such, nor do they take any rights thereunder. What passed in reality is the capital invested in the seat. When it is sold the capital is withdrawn. Ultimately the persons who take under the will of the decedent receive the capital invested by the testator in the purchase of the seat in the stock exchange. The testator had no power by will or otherwise to convey to any person, without the consent of the stock exchange, a right to a seat therein. Consequently the persons taking under the will do not take the seat, but they take the money invested therein. This is property, and would be property in the hands of the testator, and the successors take nothing else. In the report of the appraiser this property is stated to be a seat in the New York Stock Exchange, $65,000. In the affidavit of the executor, Seligman, it appears that on or about the 15th day of November, 1901, the executors sold the said seat for the sum of $65,000, which was its value on the day of the sale. It is clear, therefore, that what the legatees take under this will is money which had been invested, and this is property within the meaning of the transfer tax law, and as such is subject to the payment of the tax.

If these views are correct, it follows that the decree of the surrogate should be affirmed, with $10 costs and disbursements.

PATTERSON, J., concurs.