FRANK S. BELTON, Appellant, *v.* ALFREDERICK S. HATCH, as President, etc., Respondent.

While the New York Stock Exchange is not a copartnership, yet in so far as the rights of its members in the property of the association are concerned, they are not substantially different from those of partners.

The interest of each member is subject to the constitution and the by-laws, which express the contract by which he consents to be bound, and they are conclusive upon him in respect to the regulations of the mode of transacting his business, and of his right to continue to be a member.

When a member of the Exchange is deprived of his membership by the judgment of its governing committee, under and in accordance with the constitution and by-laws, he ceases to have any further interest in the association except as given by its laws.

The provisions of the constitution vesting the powers of government in a governing committee, whose decision after trial of a member for offenses under its laws is made final, the provision charging the committee on insolvencies with the duty of investigating cases of insolvency and reporting whether the same was caused by reckless dealing or doing business with improper parties, and authorizing the governing committee upon such report to determine whether the failure was the result of the causes specified, and if they so determine, to declare the member ineligible for readmission, and the provision declaring that where a member is deprived of his membership or declared ineligible for readmission, ' his membership may be disposed of forthwith by the committee on membership," do not contravene any rule of public policy.

When a member is thus expelled he ceases to have any interest in the association, and if his seat or membership is sold the proceeds do not belong to him but to the association, and may be disposed of as it may direct.

(Argued April 26, 1888; decided June 5, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 29, 1885, which affirmed a judgment in favor of defendant, entered upon an order overruling a demurrer to certain portions of the answer.

The nature of the action and the substance of the pleadings, so far as material, are set forth in the opinion.

*Samuel R. Taylor* for appellant. The constitution and by-laws of the Stock Exchange, or either of them, constitute a relation of copartnership between the members of the exchange. (*White* v. *Drake*, 3 Abb. N. C. 133, 134, and note; Moak's Van Santvoord's Pldgs. 524, 525.) The contract provides for the sale of the seat in a case like this, and not for an appropriation of the proceeds. (*Salters* v. *Everett*, 20 Wend. 267; *Pease* v. *Smith*, 61 N. Y. 480.) An agreement, by which the members of an association undertake to confer judicial powers, in respect to the property, in which they have a common interest, upon a body of men, and officers to be from time to time selected out of the association at large, as a tribunal having general authority to adjudicate upon alleged violations of the rules of the association, and to decree a forfeiture of the rights to such property of the parties adjudged to have been guilty of such violation, is void. (*Austin* v. *Searing*, 16 N. Y. 112, 123, 124, 125; *In re L. I. R. R. Co.*, 19 Wend., 42; *Evans* v. *Phil. Club*, 50 Penn. Rep. [14 Wright], 107; *Master Stevedores' Ass'n* v. *Walsh*, 2 Daly, 1.)

*James C. Carter*, for respondent.

GRAY, J. Plaintiff, as the assignee of one Des Marets, formerly a member of the New York Stock Exchange, sues to recover the proceeds received by that organization from a sale of the membership, or, as it is sometimes technically termed, the seat of said Des Marets. It is alleged by plaintiff in his complaint that Des Marets, for many years a member of the New York Stock Exchange, in October, 1883, became insolvent, and, under the laws governing that body, was suspended; that

subsequently its governing committee determined that the failure was caused by doing business in a reckless and unbusinesslike manner, and resolved that Des Marets was ineligible for readmission; and in December following the failure the Stock Exchange, pursuant to its constitution and by-laws, disposed of his membership and seat for the sum of $25,000; which sum it retained and refused to pay over to plaintiff, who demanded it as Des Marets' assignee. The complaint also alleges that the New York Stock Exchange is an unincorporated association, organized and located in New York city; that its members have voluntarily established certain rules, conditions and articles of association or copartnership, which are designated as their constitution and by-laws, which are signed and consented to by the members and which govern them, their officers and committees, and which control in the conduct of the transactions and concerns of the association and are binding and obligatory upon the members.

The answer of the defendant, after admitting the allegations of the complaint which I have mentioned, sets forth much of the constitution and by-laws of the Exchange, and alleges the distribution of the proceeds of the sale of Des Marets' membership to have been made among his creditors in the Exchange, pursuant to their provisions. The plaintiff demurred to this portion of the answer on the ground that it was insufficient in law upon its face. Although this matter was not stated as a separate defense, *totidem verbis*, yet as it was affirmative in its nature and constituted the defense and justification of the association in disposing of Des Marets' membership and in retaining the proceeds arising from such disposition, we shall not consider the demurrer as improperly interposed and will dispose of the questions raised by these pleadings.

Their decision involves the legal relations to each other of the members composing the association of the New York Stock Exchange, and the extent and validity of the powers reserved by its constitution and by-laws, and conferred upon its officers and committees in the management of its affairs

and in the control over a member. The New York Stock Exchange is a voluntary association of individuals, united, without a charter, in an organization for the purpose of affording to the members thereof certain facilities for the transaction of their business as brokers in stocks and securities, and a convenient exchange or sales-room for the conduct of such transactions. It cannot be said to be strictly a copartnership, for its objects do not come within the definition of one. A copartnership results from a contract between the parties by which they agree to combine their property or labor, or both, in some common enterprise and for a common profit, to be shared in the proportion stated in their agreement. The objects of a voluntary association of brokers do not, however, involve any such combination, or any communion of profits from the business transacted by the members. Like a business club, its principal object is the promotion of the convenience of its members by furnishing facilities which aid them in doing their business, and are, therefore, of benefit to them. It may be said, however, that the rights of the associates are not substantially different from those of partners, so far as their rights in the property of the association are concerned. The interest of each member in the property of the association is equal, but it is subject to the constitution and by-laws, which are the basis on which is founded the association. They express the contract by which each member has consented to be bound, and which measures his duties, rights and privileges as such. It seems most clear to me that this constitution and the by-laws derive a binding force from the fact that they are signed by all the members, and that they are conclusive upon each of them in respect of the regulations of the mode of transaction of his business, and of his right to continue to be a member. Whatever are the rights acquired by a member and created by his admission to membership, the rules by which the membership is created or dissolved, and which control the affairs of the organization and the relations of members, entered into those rights when created and remained a part of them. In this proposition there is nothing

against public policy, for the reason that whatever a member acquires is subject to the self-imposed condition that his title and the rights which accrue from his membership are regulated by, and are dependent upon the laws adopted by the association, and expressly consented to by him when he joined. When Des Marets, plaintiff's assignor, joined the Exchange, it may be perfectly true that he acquired property; but it was property given by the act of those who, in giving it, accompanied the gift with conditions which were incident to, and a part of, the property; and it was in no sense property created by the individual's act. I consider that there is an obvious distinction between property of the individual's own creation, to which he attaches conditions, or in the disposal of which he exerts a direction, whereby the claims of others are affected, and property which comes to him subject to conditions which may deprive him of its use or enjoyment. And so here, if the constitution, which forms the basis of this association, appropriates to his creditors in the association, or to any of its corporate objects, the peculiar property of the member, who, by force of constitutional provisions, has lost his membership, that was an incident entering into his title to it. When membership and the rights belonging to that status were conferred upon him, the gift was accompanied by a condition that the rights, of whatever nature, should revert to the association upon the happening of certain events, and he cannot be heard to complain; nor can third persons, claiming to derive under him. He should be held to his contract, which was reasonable, and, when entered into, prejudiced no rights of others, nor conflicted with any statutory or common-law right. A person acquires by his admission to membership only such rights as the constitution and by-laws of the association give him; and upon ceasing to be a member, by the competent judgment of the governing committee, he ceases to have any further concern or interest in the association, except it is given by its laws.

The New York Stock Exchange, by the accumulation of a great fund from a large membership, by the wise and success-

ful management of the members, and by the acquisition of valuable facilities for the transaction of business, has given to membership an important pecuniary value. It is fair to presume that this prosperity and success were, in an important degree, due to the regulations adopted looking to the conduct by a member of his business, and the restraints imposed upon reckless or dishonest methods. Membership may be property; but it is not property in every sense. If it is property, it is incumbered with conditions when purchased, without which it could not be obtained. (*Hyde* v. *Woods*, 94 U. S. 523.)

By the constitution of this association the powers of government are vested in a governing committee, whose decision, after the trial of a member for offenses under its laws, is final. Standing committees are appointed by them, and the committee on insolvencies is charged with the duty of immediately investigating every case of insolvency and of reporting whether the same was occasioned by reckless dealing or by doing business for improper parties. Should the governing committee, upon this report, determine that a member's failure was caused by doing business in a reckless and unbusiness like manner, he may be declared ineligible for readmission by a majority vote of the entire governing committee. By section 2 of article 13 of the constitution, it is provided that " in every case where a member is deprived of his membership, or declared ineligible for readmission by the governing committee by reason of any offense against or under the laws of the Exchange, his membership may be disposed of forthwith by the committee on admissions."

The plaintiff, appellant, contends that in such a case as this of Des Marets' severance from membership, there was no power under the constitution to distribute the proceeds arising from the sale of his membership, and that, in the absence of some express reservation of the right to dispose of those proceeds, they are the property of the member. The vice in plaintiff's argument is in the assumption that a member has any absolute property of his own in such a case. As we have before seen, the rules of the association were an incident to

the rights acquired by a person upon admission; and one of those rules was that for conviction of an offense against or under the laws of the Exchange, a suspended member might be deprived of right to readmission to membership. When expelled he ceases to have any interest in the association. His privilege to transact his business at that place has been lost. The association may fill the vacancy caused by his expulsion, or not, as they please. They cannot be compelled to do so; but if they elect to admit a new member, and can derive, from so doing, any profit, that is their unquestionable right, with the exercise of which others are not concerned. They may do with their own as they like. As I construe section 2 of article 13, above cited, its effect is that of an express reservation of the right to deprive a member, found guilty of an offense under its provisions, of all rights, interest and claim whatever.

The right is given to a member in good standing to propose for admission in his stead some one acceptable to the committee on admissions, and any profit he derives from his negotiations with the candidate is his. So if a member becomes honestly insolvent and fails to qualify under the rules for readmission, or if he dies, after the claims of the association are discharged, the proceeds may be paid to him or his legal representatives, as the case may be. But in the case of a member, who, by misconduct cognizable by the laws of the association, forfeits his right to continue to remain a member, there is reserved by the constitution the right to dispose of his membership. These rules are reasonable and do not contravene any rule of public policy, and having been consented to by the plaintiff's assignor, deprived him of any interest or rights in the association, of which he had ceased to be a member.

These views lead to an affirmance of the judgment appealed from.

All concur.

Judgment affirmed.