## YOUNG v. EAMES.

(Supreme Court, Appellate Division, First Department. January 16, 1903.)

1. NEW YORK STOCK EXCHANGE—EXPULSION OF MEMBER—ACTION FOR REIN-STATEMENT—BURDEN OF PROOF.

Plaintiff alleged that he was a member of the New York Stock Exchange, and that it refused to recognize his rights as a member, and demanded judgment that it be restrained from preventing him acting as a member. The answer set forth certain parts of defendant's constitution, and that after trial before the committee of the exchange, on due proceedings, plaintiff was found guilty of fraud and expelled. Plaintiff denied the fraud, and denied that there was any evidence sufficient to sustain a charge of fraud against him. *Held*, that while, under the pleadings, it might be incumbent on defendant to prove the making of the charges, proper procedure, and decision of expulsion, it was not called upon to produce all the evidence on which the decision rested.

2. SAME—DECISION—EXPELLING MEMBER—EFFECT.

There was a presumption that the decision expelling the member was founded on sufficient evidence.

3. SAME—ISSUES.

Plaintiff, under his reply, was confined to the issue as to whether there was sufficient evidence to sustain the charge of fraud.

4. SAME—REVIEW OF DECISION.

On the issue as to the sufficiency of the evidence to sustain the finding, the question is not whether the court would have reached the same conclusion, but whether honest minds could have reached such conclusion.

5. SAME—ISSUES—FICTITIOUS SALES—FRAUD.

The constitution of the New York Stock Exchange provides that, on conviction of fraud by the governing committee, a member may be expelled, and also forbids the making of any fictitious sale, and fixes a punishment for fictitious sales, consisting of expulsion for a certain period. Plaintiff alleged the refusal of 'the exchange to recognize him as a member. The answer set up his expulsion for fraud, and his reply set up insufficiency of evidence of fraud. *Held*, that there was no issue raised as to the power of the exchange, on finding plaintiff to have made a fictitious sale, to expel him for fraud.

6. SAME—RULES OF ASSOCIATION—FICTITIOUS SALE—FRAUD.

The fact that a transaction indulged in by a member is a fictitious sale does not preclude the committee from making a finding of fraud, inasmuch as the same act may constitute a fictitious sale and also fraud.

7. SAME—CHARGES AGAINST MEMBER—SPECIFICATIONS—ANSWER—ISSUE.

The specifications presented to the governing committee of the New York Stock Exchange against a member, on which a charge of fraud was based, after referring to the sale of a certain number of shares of certain stock, and the manner in which it was conducted, alleged "that all the aforesaid transactions were had by the parties in pursuance of an agreement for the purpose of bringing about fictitious and fraudulent sales, and other like fictitious transactions"; and the member, in his answer to the committee, admitted that there were on the books of the firm several accounts that had excited his suspicions, but that he believed that nothing fraudulent or contrary to the rules of the exchange was taking place. *Held*, that the scope of the charges was not limited to the particular transaction as to the shares mentioned.

Appeal from special term, New York county.

Action by William Euclid Young against Francis L. Eames, as president of the New York Stock Exchange. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

See 53 N. Y. Supp 678.

The complaint avers that the plaintiff is, and has been at all times since 1869, the date of its organization, a member of the New York Stock Exchange, and entitled to the accruing benefits therefrom, and an interest in its property; that "on or about the 30th day of December, 1896, the said defendant association, its officers, members, servants, and agents, prevented, and ever since have prevented, this plaintiff from participating in the rights and privileges of membership in said association, and have refused and do continue to refuse to allow him to come upon the floor of said New York Stock Exchange," and that the plaintiff is damaged therefrom, wherefore he asks judgment that it be decreed that he was and is a member of said association, in full and good standing, and that said association be restrained from preventing him from exercising the full rights and privileges of membership, and that he recover damages. The answer denies certain of the plaintiff's allegations; avers that he was formerly a member of the stock exchange, "but was found guilty of fraud and dishonest practices, and was for that reason * * * expelled from membership"; and admits that he has since such time been excluded from the floor of the stock exchange. The answer then sets forth the constitution of the association adopted on its organization, so far as the same relates to the powers of its governing board, the trial of members for fraud, and the method of procedure, and avers that the association proceeded to charge and try the plaintiff in accordance with such provisions. In a reply the plaintiff denies that he was guilty of fraud, that there was any complaint or accuser charging him, or that there was sufficient evidence or any evidence presented to sustain any charge of fraud, and avers that the proceedings were illegal, and that if he had been present and aided by counsel, and been fairly and justly treated, he could have established his innocence.

Upon the trial the defendant assumed the affirmative, and put in evidence the portion of the constitution set forth in the complaint as to removal for fraud. The charge and specification of fraud made against the plaintiff was then introduced, bearing the date of December 16, 1896, wherein it is recited: "That on August 28, 1896, the said firm of E. B. Cuthbert & Co., of which firm said William Euclid Young was then a member, and which firm was then represented by him in this exchange, had received from R. D. Stewart, a customer of said firm, an order to sell fifty shares of the capital stock of the Chicago, Burlington & Quincy Railroad Company, and said firm reported to said R. D. Stewart that they had sold for his account fifty shares of said stock, at the price of 59¼, to J. Kirkner. That said report was made by said E. B. Cuthbert & Co. with intent and for the purpose of inducing on the part of said customer the belief that said sale had been so made in the regular course of business to said Kirkner, as reported. That said report was, as said firm of E. B. Cuthbert & Co. and said Young then well knew, false and fraudulent. That said sale was a pretended and fictitious one, and not a real sale of said stock, and that said firm of E. B. Cuthbert & Co. never intended to deliver any stock thereon. That, as matter of fact, said pretended sale was not made to said Kirkner, but was made by said Young, on the floor of the exchange, to James Boyd, a member of this exchange. That on the 31st day of August, 1896, the day on which the certificate of stock upon said sale would have been deliverable, in the regular course of business, had said pretended sale been a regular or real transaction, said firm of E. B. Cuthbert & Co. delivered to said Boyd a sale ticket for said fifty shares of stock, which ticket was unaccompanied by any certificate of stock or duebill; and thereupon, and without receiving any stock or duebill, said Boyd paid E. B. Cuthbert & Co. the sum of $2,962.50, the price of said stock according to said pretended sale. That thereupon, and on the same day, said Boyd delivered a sale ticket for said fifty shares of stock to C. W. Turner & Co., a firm of which C. W. Turner, a member of the stock exchange, was then a member, which sale ticket called for the same amount, viz., $2,962.50, as the price of the stock; and thereupon C. W. Turner & Co., without receiving any stock or any duebill, paid the said sum of $2,962.50 to said Boyd. That thereupon, and on the same day, said C. W. Turner & Co. delivered to said E. B. Cuthbert & Co. a sale ticket for said fifty shares of stock, calling for said sum of $2,962.50, but unaccompanied by any cer-

tificate of stock or duebill; and thereupon said E. B. Cuthbert & Co., without receiving any stock or any duebill, paid the said sum of $2,962.50 to said C. W. Turner & Co. That all the aforesaid transactions were had by the parties named as participating therein in pursuance of an agreement, arrangement, or understanding which existed between them on or prior to said 28th day of August, 1896, and which was entered into and arranged by said firm of Cuthbert & Co. for the purpose of enabling them to give to said fictitious and fraudulent sale, and other fictitious and fraudulent transactions by way of purchases or sales made by them, the appearance of regularity, and to enable them to show the actual receipt of money upon said pretended sales in the event of any inquiry concerning the good faith or reality of the transaction; but, as matter of fact, the actual result of said transactions was that, through the aforesaid payments by one of said parties to the other, the amount paid by said Boyd to E. B. Cuthbert & Co. upon said pretended sale was, and was intended to be, ultimately repaid by said E. B. Cuthbert & Co., and no sale or delivery of stock was ever made or intended by said E. B. Cuthbert & Co. And that said transactions so conducted and carried on by said E. B. Cuthbert & Co. and said report so made by them to their said customer, was false, fictitious, and fraudulent, as against said customer."

In his answer to this charge and specification, the plaintiff stated that, although this sale was made to Boyd, Boyd was acting as agent for Kirkner, and reported the sale to the latter, and that the firm of Cuthbert & Co. "had made an arrangement with the said J. Kirkner for the purpose of dealing in odd lots of shares of various stocks, which agreement was to the effect that, if either party sold to the other any such odd lots of stock, the party buying would, upon request, temporarily lend the stock so sold to the party selling, at the then current market rates for loans, and at the end of a certain period they should adjust their transactions by the actual delivery of certificates of stock to the amount necessary to balance the accounts"; that a duebill did accompany the sale in question, and that he was guiltless of any intentional wrongdoing, and, on account of the severe criticism to which the business methods of E. B. Cuthbert & Co. had lately been publicly subjected, he had dissolved his connection with that firm; that he had had no part in shaping such business methods of the firm, and was simply its board member, and his large pecuniary obligations to the senior member "may unfortunately have led him to acquiesce in methods" he did not wholly approve, and to be silent when he "should have protested." A supplemental answer of the plaintiff further referred to the business methods of his firm, and particularly to such as had from time to time excited his suspicions, but which he states he did not believe were illegal or in violation of the rules of the stock exchange.

At the hearing of the charge made against the plaintiff, there were present 39 members of the governing committee, which committee comprises 40 members, in addition to the president and treasurer of the exchange. The question was asked at the trial at special term whether or not a notice was served upon each member of the governing committee for the special meeting, which question was excluded, and exception taken. Having shown by the papers introduced and the testimony of the secretary of the exchange that the charges against the plaintiff had been duly made, and the hearing regularly had, and witnesses examined,—the plaintiff being present himself and permitted to state his case,—and that the committee had by unanimous action expelled him from membership, the plaintiff moved for judgment on the ground that it had not been shown that sufficient evidence was introduced upon the hearing to sustain the charges, which motion was denied, and exception taken. The plaintiff then called the defendant's secretary, and showed him a paper dated November 30, 1896, and asked him if that had reference to a previous charge made against the plaintiff, which question was excluded, and exception taken. The paper was offered in evidence, but excluded under exception, and marked for identification. Therefrom it appears that the plaintiff had been charged with making a fictitious sale in selling 50 shares of Chicago, Milwaukee & St. Paul Railroad stock for R. D. Stewart to J. Kirkner, thereby contravening that provision of the constitution of the exchange which says (article 22, § 8): "No fictitious sales shall be made. Any

member contravening this section shall upon conviction be suspended for such period not exceeding twelve months as a majority of the governing committee present at a meeting thereof may determine." This section of the constitution was then put in evidence by the plaintiff. The charge of November 30th was offered "for the purpose of showing that the exchange defined this transaction as a fictitious sale, and that the transactions were precisely the same, only different shares of stock," but, as stated, was excluded under exception. Subsequently the question was asked: "What is a fictitious sale, as known to the stock exchange?" But this, also, was excluded, and exception taken.

Testimony was introduced by the plaintiff to show that there was in fact a duebill accompanying the sale of the stock, and a fac simile of what is claimed to be such duebill appears in the record, and is in the following form:

NEW YORK,....Aug. 31st......1896

SOLD.............................................................

By E. B. CUTHBERT & CO.,

7 Exchange Court.

Account of.................................

GOOD FOR 75 SHARES OF C B & Q

| E. B. CUTHBERT & CO. | E. B. CUTHBERT & CO.   H |
| --- | --- |
| ~~J. KIRKNER.~~ | JAMES BOYD   B |
| JAS. BOYD | CHARLES W. TURNER & CO. |
| C. W. Turner | |
| E. B. CUTHBERT & CO. | |

Such paper, it was shown, had been handed from Cuthbert & Co. to Boyd, and thence to C. W. Turner, and back to Cuthbert & Co. The defendant refers to it as a "sale ticket," and claims that a duebill should be worded "due to" or "owe"; but the plaintiff and his witnesses call it a "duebill," and it was testified that Cuthbert & Co. always used this precise form for a "duebill." The question whether, upon the hearing before the governing committee, any objection was made to such form of duebill, was excluded, and exception taken.

At the close of the trial at special term the defendant handed to plaintiff's attorney the transcript of the minutes of the hearing, and the latter asked for an opportunity to inspect it. The court, however, refused to adjourn or to give an hour for such inspection, and the minutes were not put in evidence. The special term held that sufficient evidence had been presented, regardless of what the entire testimony was, to warrant a finding of fraud against the plaintiff, and accordingly dismissed the complaint. From the judgment so entered, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

George H. Mallory, for appellant.
Lewis Cass Ledyard, for respondent.

O'BRIEN, J. The New York Stock Exchange is a voluntary association, and its legal status and nature, the character of its member-

ship, and the rights of the members under the constitution and by-laws, have been fully discussed in several cases,—notably, in Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225, 4 Am. St. Rep. 495. It would serve no useful purpose to further trespass upon a domain which has been so fully covered; it being only necessary to apply to the facts appearing in this record the principles which have been settled in adjudicated cases, and which must serve as our guide.

Apart from some features bearing upon the merits, to which we shall hereafter advert, the principal questions relate to rulings by the learned trial court in excluding evidence offered in behalf of the plaintiff. Upon a trial involving rights as valuable and important as those which accrue from membership in the stock exchange, and a determination of its governing committee which in expelling a member affects most seriously his character, business standing, and monetary interests, it would seemingly be the better practice, when practicable, to have before the court all the facts, and, when consistent with the pleadings, to have the record barren of questions which touch upon the plaintiff's right to a full and exhaustive inquiry into the merits of his expulsion. The learned trial judge was quite strict in his rulings excluding evidence, and thus the record contains many exceptions, to which we will hereafter advert, and which, as matters of first impression, look rather formidable. In considering, however, the validity of the exceptions upon which the appellant relies for a reversal of the judgment, we must scrutinize the pleadings for the purpose of determining the precise issues involved, and the order in which they were presented at the trial.

The usual complaint in actions of this character consists of allegations of membership, the exercise of rights thereunder, and that at a time specified, as the result of proceedings taken by officers or by a governing committee, the plaintiff was unlawfully expelled, followed by specified instances in which it is claimed that the proceedings leading up to the expulsion were unlawful and void, and which are relied upon by the plaintiff for the purpose of destroying the force of the formal resolution of the association terminating membership. The issues usually presented, therefore, upon which the plaintiff takes the affirmative, consist of defects, omissions, or irregularities in procedure, or grounds which assail the jurisdiction of the trial tribunal, or the character and sufficiency of the charges under the constitution, or the insufficiency of the evidence to support the charge, or, in fine, any other question upon which the plaintiff relies as tending to show that the formal resolution of expulsion was irregular, unlawful, or void. No such form of complaint, however, was here used; but the plaintiff, intending to place upon the defendant the burden of sustaining the validity of the resolution expelling him, in his complaint briefly sets forth, in effect, that he was a member in good standing for many years; that the exchange refused to recognize his rights as a member in good standing; and that he therefore demanded judgment that it be decreed that he "was and now is a member of the said association, in full and good standing, with the right to the enjoyment of all the privileges of such membership, and that the said defendant association * * * be restrained and enjoined from preventing this plaintiff from going

freely upon the floor of the said New York Stock Exchange and transacting business there." The defendant was compelled, therefore, necessarily, to set forth in the answer so much of the constitution of the association as related to membership, and the composition and powers of the governing committee thereunder, which should try a member upon charges, and the procedure which thereunder must be followed, bearing upon the expulsion of members for fraud. These provisions of the constitution were followed by allegations that the method of procedure was complied with, and that the plaintiff, after due notice of the charge of fraud, and a hearing, was duly and legally expelled. In the reply the plaintiff (omitting the conclusions of law therein contained as to the expulsion not being legal) denied that he was guilty of fraud, or that there was any complaint or accuser charging him, or that he was guilty of the alleged charge, and further alleged that if he could have been present, with the aid of counsel, and been fairly and justly treated, he could have established his innocence of the charge. Then follows the paragraph which presented what was really the issue upon the trial at special term, in which plaintiff "denies that he was fairly or justly treated by or before the governing committee, and denies that there was any evidence before said committee sufficient to in any degree sustain any charge of fraud or misconduct, or that there was any evidence before said governing committee in said behalf." In this condition of the pleadings, the trial was brought on, and it was determined that the affirmative was with the defendant, to which no objection or exception was made. Thereupon the defendant produced a copy of the constitution of the exchange, and called attention to the various articles therein already referred to, and then proved the making of the charge and written specification, the service thereof on the plaintiff, together with notice of the date of the hearing, specifying the day and hour, together with a paper signed by the plaintiff acknowledging receipt of a copy of the charge and notice of the hearing. The plaintiff's written answers to the charge were also put in evidence. It was further proved by the defendant that a meeting of the governing committee was held on the date named, at which there were present 39 members, the president being chairman; that the matter of the charge against the plaintiff was taken up by the committee, and he appeared before it; that the president announced that, in accordance with the resolution adopted by the committee, this special meeting had been called for the purpose of hearing the charges; that a motion was made that they proceed, which was seconded and carried, and the president stated that the committee would thus proceed unless objection was made; that, no objection being made, the committee took up the charge, and the plaintiff was called and appeared before the committee, and in his presence were read the charge of fraud and the specification, and his answer and supplemental answer; that he was permitted to make a statement; that a number of witnesses were called and examined, and the plaintiff made an additional statement and retired, and thereupon it was moved that the committee determine that he was guilty of the specifications in the matter of accusation and charge, and that he was guilty of fraud, and that he be expelled; that these several motions were directed to

carrying out the conclusions of the body, and were unanimously carried, and resulted in the final declaration by the president that the plaintiff was expelled from the exchange. After the examination and cross-examination of the defendant's secretary, through whom these facts were proven, the defendant rested; and the plaintiff then moved for judgment on the ground that the defendant had failed to show that any evidence was introduced upon the hearing to sustain the charge. This motion was denied, and the exception to the ruling thus made presents the first question for our determination.

Having cast the burden on the defendant, the plaintiff's contention was that it was incumbent upon the defendant to produce all the evidence taken before the governing committee, or at least so much of it as would show that the charge was sustained. The view taken by the defendant was that the only burden resting upon it was to prove the preparing of charges, notice of the hearing, the calling of witnesses, and the decision reached, and, it appearing that the governing committee had followed the method of procedure required by the constitution, that the defendant was not called upon to produce all the evidence taken before them upon which their decision rested. In our opinion, the ruling made in support of this contention was right. In a court of law, where a judgment is rendered after a trial, a presumption arises as to its validity, and it is incumbent upon one who would seek to destroy its binding force and effect to take up the burden of overthrowing this presumption. This principle applies with greater rigor to the proceedings and decision of the governing committee, which, under the by-laws of the association, is the tribunal empowered to try charges made against a member. It being shown that the body purporting to act had jurisdiction of the subject-matter and of the person, and that they proceeded regularly under the rules provided for their guidance, and that they thereafter rendered a decision, the presumption that it was founded on sufficient evidence arises; and, while this presumption is not conclusive, it rests upon the one who assails the decision to show in what respect it is either irregular or void. The plaintiff, accordingly, by force of the ruling properly made by the learned trial judge, was compelled to assail the decision of expulsion, and undertook to introduce evidence to show that in certain respects it was not properly or legally rendered. Here, however, he was met with the rule in respect to pleading to which we have adverted,—that he was confined in his assault on the decision to the issues presented by his reply. His allegations therein that there was no complaint or accuser, or that he was not present at the trial, or that no opportunity was afforded him to establish his innocence, or that he had no counsel (having asked for none), need not, in view of what was shown by the defendant to have occurred before the governing committee, be discussed. And it having been shown that some evidence was taken by the committee, the plaintiff was by his reply, as we have endeavored to point out, practically confined to the issue whether or not there was sufficient evidence to sustain the charge of fraud. Without specifically referring, therefore, to the various rulings made excluding evidence sought to be elicited by the plaintiff as to whether a notice was served on each member of the governing committee for the special meeting,

as to how often, by the constitution, special meetings were called, and as to whether or not prior charges had been made against the plaintiff, it is sufficient to say that these and many other rulings of like import were properly made upon the ground that the evidence did not bear directly upon the issue, and these rulings therefore can be sustained. The plaintiff, upon the single issue as to the character of the · evidence adduced before the committee, was in his own testimony given considerable latitude in stating his recollection of all that occurred; and, though he did not claim that there was no further evidence presented at the hearing, his testimony, read in the light of his answers to the formal specification (which answers came near to being a confession of the charge, because the plaintiff therein admitted the transactions specified which were the basis of the accusation, and sought to exculpate himself by a mere disclaimer of any intentional wrongdoing or fraud), proved that sufficient evidence was given before the committee, upon which it had a right to pronounce the judgment it did, of his guilt.

It is not for us, in reviewing the proceedings before the committee, to determine whether we would, upon the merits, have reached the same or a different conclusion. It has been settled in People v. New York Produce Exchange, 149 N. Y. 401, 44 N. E. 84, that the merits are not open to re-examination by a court. As therein said:

"The question for the court is not whether, passing upon the evidence as res nova, it would have reached the same conclusion as that of the board of managers, or whether the conclusion was reasonable or unreasonable, but simply and wholly whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion that the relator's conduct was 'inconsistent with just and equitable principles of trade.'"

And in a former part of the same opinion it is said:

"It would seem, in view of the generally summary character of the proceedings, and that they are not subject to review by the ordinary process of appeal, that a total absence of evidence to support the sentence of expulsion should have the same force in a mandamus proceeding as an absence of jurisdiction to make any inquiry at all."

In this connection, we must recall the recent case of Neukirch v. Keppler, 56 App. Div. 225, 67 N. Y. Supp. 710, wherein, as here, the transaction which was the basis of the charge was admitted, and the only denial was that it was fraudulent or intended to aid in dishonest practices, and the court said:

"It appears that there was a full investigation made of the circumstances surrounding the transaction, or, in other words, the merits were fully inquired into; and, if the investigation was a fair one, the judgment of the stock exchange, to which the plaintiff, as a member of that body, was subject, cannot be reviewed on the merits by the courts. As was remarked in Lewis v. Wilson, 121 N. Y. 288, 24 N. E. 474, whether the committee decided rightly or wrongly upon the merits does not change that 'attitude of the plaintiff as a member of the association. * * * All that he could require was that the investigation should be conducted bona fide upon notice to him, and an opportunity to be heard, and that the decision made should be within the scope of the jurisdiction conferred on the committee. Bigelow v. Benedict, 70 N. Y. 204, 26 Am. Rep. 573; White v. Brownell, 2 Daly, 329; Lambert v. Addison, 46 Law T. (N. S.) 20; Dawkins v. Antrobus, 17 Ch. Div. 615.' There can be no question here of the jurisdiction, nor of the legality of the

steps taken by the stock exchange in investigating the charges made against the plaintiff."

This is but another form of stating what is settled by all the authorities,—that voluntary associations are themselves the exclusive judges of their mode and manner of proceeding, and that it is only in a case where such proceedings resulting in the expulsion of a member are contrary to natural justice that a court of equity may interfere. Olery v. Brown, 51 How. Prac. 92; Inderwick v. Snell, 2 Macn. & G. 219; Hopkinson v. Marquis of Exeter, L. R. 5 Eq. 63; Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225, 4 Am. St. Rep. 495; Lewis v. Wilson, 121 N. Y. 284, 24 N. E. 474. In order, therefore, to determine whether there was a "total absence of evidence," or whether the proceedings were "contrary to natural justice," it would be necessary for the court to have before it, among other things, all the evidence upon which the decision was based. In this connection, the most obvious comment to be made upon this record is that it does not purport to contain all the evidence that was given at the hearing before the committee. This had all been taken down by a stenographer, was in court, and was available to either party to present; and, if we are right in our view that under the pleadings the burden rested upon the plaintiff of proving that the decision was founded upon no evidence or upon insufficient evidence, it was clearly his duty to have offered the minutes of the testimony taken at the hearing. Having failed to do so, we have no right to assume that, if admitted, it would not have supported the decision of the committee. Apart from that, however, as we have already pointed out, we think that the plaintiff himself furnished the evidence from which it can be seen that the question of his guilt or innocence of the charge was before them for determination.

The next question is whether the charge was one for which the plaintiff could be expelled. The constitution provided:

"Should any member be guilty of fraud, of which the governing committee shall be the judge, he shall, upon conviction thereof by a vote of two-thirds of the members of said committee present, be declared by the president to be expelled. * * *"

The very charter of the society, therefore, which was binding upon the plaintiff, relegated to the committee the right to judge as to whether or not, upon the admitted facts, the member was guilty of fraud. Another provision of the constitution (article 22, § 8) is to the effect, however, that:

"No fictitious sale shall be made. Any member contravening this section shall upon conviction be suspended for such period not exceeding twelve months as a majority of the governing committee present at a meeting thereof may determine."

Upon this latter provision of the constitution the appellant places his main reliance; his claim being that the transaction in which he was concerned was at most but a fictitious sale, for which the constitution provided the penalty of suspension; and hence, he argues, neither the committee nor the exchange had any right or power to characterize the transaction as a fraud, when in fact it was, under the constitution, but a fictitious sale, for which specific punishment was fixed. Counsel sought, by examination of the defendant's secretary and by the evidence of the plaintiff, to prove that what the latter had made,

and what he was guilty of, if anything, was, under the constitution, and by the common understanding of the members, and by the construction placed thereon by the exchange itself, a fictitious sale. In this connection he sought to prove that, for a similar transaction on a previous occasion, the secretary of the exchange had made a charge against the plaintiff as for a fictitious sale. The evidence was excluded, and hence it is claimed that, had plaintiff been allowed to present such proof, the court must have reached the conclusion that the exchange was powerless to enlarge the offense, and, by calling it "fraud," render the plaintiff liable to expulsion. There are several answers to this, the first being that no such issue was raised by the pleadings. The second is that the question of fraud, within proper limitations, was relegated to the governing committee, as the sole judge. If, in any aspect to be taken of the transaction, it could not amount to fraud, then, obviously, there would be force in the appellant's contention; but where a member engages in a transaction which in one view may be regarded as a fictitious sale, but in another as fraudulent in its nature, there is no rule of the association, nor is there any rule of law, which requires that he should be tried for the lesser offense. The mere characterization of the act would not make it fraudulent; but where the transaction upon which the charge is based is set forth, and is such that, if proved, would amount to fraud, the fact that it might also be fictitious or unreal, which is the usual accompaniment of a fraudulent act, would not make the act any less a fraud. In other words, it requires no argument to show that the same act may constitute a fictitious sale and a fraudulent sale of stock; and taking the facts as proved, which we must, for the reasons stated, it would not prevent the governing committee, even though the transaction migh., in one view, be regarded as a fictitious sale, from trying the plain upon the charge of fraud, if the act was one which could properly fall within that category. Were there doubt on the subject, there might be some room for insisting that oral evidence was competent to explain the meaning of the act, within the constitution. The committee, however, were the sole judges of whether or not a member was guilty of fraud; and where the charge, as here, was one that would come within that classification, they were not bound to abstain from exercising the right which they possessed, of trying a member for fraud, merely because, had they reached the conclusion that the transaction was without intent to injure another, they could have proceeded upon the theory of a fictitious sale. The motives of the member, the intent accompanying the act, the question whether injury to a third party was involved, were all considerations to be weighed by the committee in determining whether or not a fraud was committed. If, therefore, the plaintiff, acting on behalf of a customer, pretended to make a sale, when in point of fact no sale was made, and the customer was thereby injured, the act was fraudulent in its nature; and no amount of testimony to the contrary would enable the court to reach the conclusion that the committee were without power to try the plaintiff upon the charge of fraud, of which they were made the sole judge.

We cannot sum up this branch of the discussion better than is done by the respondent in the brief, wherein it is said:

"A fictitious sale might or might not be fraudulent. If two brokers agree to go upon the floor of the exchange, and, for the purpose of making a quotation in a particular stock, agree that each will sell to the other a hundred shares of a given stock at a given price for the sole purpose of affecting the quotations, such a transaction would be a fictitious sale. It might not necessarily be fraudulent. * * * But when a broker receives an offer from a customer, and pretends to execute it, and does not execute it, but reports to the customer that he has done so, his action is a fraud upon the customer; and such was the nature of the offense for which the plaintiff was tried before the committee."

Another and conclusive answer upon this branch of the case is furnished by a consideration of the extent of the charge against the plaintiff, and his answers made thereto. He endeavors to restrict the inquiry upon which the governing committee rendered its decision upon the hearing to this single transaction. The specification presented to the governing committee against the plaintiff, however, upon which the charge of fraud was based, was not confined to this single transaction, but such transaction was therein specified as furnishing evidence of what was the real charge. Thus the specification, after referring to the sale of the 50 shares, and the manner in which such sale was conducted, continues:

"That all the aforesaid transactions were had by the parties above named as participating therein in pursuance of an agreement, arrangement, or understanding which existed between them on or prior to said 28th day of August, 1896, and which was entered into and arranged by said firm of Cuthbert & Co. for the purpose of enabling them to give to said fictitious and fraudulent sale, and other like fictitious and fraudulent transactions by way of purchases and sales made by them, the appearance of regularity, and to enable them to show the actual receipt of money upon said pretended sale in the event of any inquiry concerning the good faith or reality of the transaction. But as matter of fact, the actual result of said transactions was that, through the aforesaid payments by one of said parties to the other, the amount paid by said Boyd to E. B. Cuthbert & Co. upon said pretended sale was, and was intended to be, ultimately repaid by said E. B. Cuthbert & Co., and no sale or delivery of stock was ever made or intended by said E. B. Cuthbert & Co. And that said transactions so conducted and carried on by said E. B. Cuthbert & Co., and said report so made by them to their said customer, was false, fictitious, and fraudulent, as against said customer."

That this was the scope of the charge, and was so understood by the plaintiff, appears particularly from his second written statement or answer to the governing committee, in which he refers to the manner in which the firm of Cuthbert & Co. dealt with their customers, and says:

"Among the accounts on the books of the firm there were several that at various times excited my distrust and suspicion,—especially one account standing in the name of a person resident in a distant state. In the name and for the account of this supposed customer large and numerous transactions were had, and of a nature which from time to time aroused my suspicion that they were not genuine and in good faith. The transactions had for the account of this person were mainly the 'countering' of transactions had by the firm for the account of other customers; that is to say, an order to buy for the account of a general customer would be met by an order to sell a like amount for the account of this person, and an order to sell by an order to buy some time during the same day."

Thereafter he says that the account in question showed a margin deposited, but the transactions were so large that they excited his dis-

trust, and he expressed to his senior partner his misgivings, and was told that the latter had exclusive control of the management of the business, commissions were regularly charged, and he would personally guaranty the account. It was not until the charge was made against the plaintiff that, although his suspicions had continued, he decided to visit this supposed customer, but was advised by his attorney not to do so. Finally he says:

"With all my distrust and misgivings in respect to this account and others referred to, I thought, in any event, the business was legal and not in violation of any rule of the exchange; and, should the governing committee decide it to be otherwise, I ask for such clemency as I may be entitled to by reason of the facts above stated, and the entire absence on my part of any intentional wrongdoing."

The governing committee, it thus appears, were not bound to limit their investigation to the particular transaction set forth in the specification, except to the extent that it furnished a sample or evidence of the character of the transactions which were carried on by Cuthbert & Co. through the plaintiff as their broker on the exchange. In determining, therefore, whether or not he was guilty of fraud, it was proper for the committee to examine into the business methods of Cuthbert & Co., of which the plaintiff was a member. The plaintiff concedes they were suspicious, and with the aid furnished by the evidence of the single transaction specified, and by other evidence which we must presume the committee had before it, the question of whether the methods were fraudulent, and to what extent plaintiff was responsible for them, were for the committee to decide. No attempt was made before the committee, nor could it have been, to support the contention that the transactions of Cuthbert & Co. with their customers were honest; and, starting with this fact practically conceded, the point to which the attention of the committee was confined was the extent to which the plaintiff was directly responsible for such transactions. As their methods were fraudulent, it would follow that, if the plaintiff knowingly participated and aided in the perpetration of the fraud on the customers, he, too, was guilty of fraud. Although, therefore, we have discussed the question from the narrow compass into which the appellant would seek to crowd it,—that the inquiry before the committee related to the single transaction specified,—we think that we have sufficiently indicated that, in our opinion, it was of wider scope, involving the honesty or dishonesty of the business methods of Cuthbert & Co. with its customers, and the participation therein of the plaintiff.

Another question is whether the charge of a pretended sale, unaccompanied by a duebill or stock, was sustained; the respondent contending that the paper which passed in the transaction was improper in form, and the appellant asserting that, to all intents and purposes, it was, as matter of fact, a duebill. This subject, however, needs no elaboration, for the reason that it is not determinative, for the plaintiff might be guilty of fraud with or without there being a duebill used in the transaction.

In examining the entire record, therefore, we find no fair ground for disturbing the judgment entered, although, as stated, it would have been more satisfactory if some of the evidence excluded had been ad-

mitted. The plaintiff, as to this, however, has no just ground of complaint. He deliberately chose the form of his pleadings, upon the theory, no doubt, that the burden would rest upon the defendant not only of proving the proceedings and the decision reached, but also of producing all the evidence taken upon the hearing, and showing that it was sufficient to sustain the finding. The burden not being as onerous upon the defendant as was thought, the plaintiff was unwilling himself to offer the evidence, and remained content with giving as much of it as he could recollect. In this, as in his original answer to the specification, he showed that there was a basis for the finding of the committee; and, were this not so, it appears that there was other evidence upon which the committee acted, and the plaintiff is concluded by the presumption which follows the decision that the evidence was sufficient to sustain it.

Our conclusion, therefore, is that the judgment appealed from should be affirmed, with costs. All concur.