NEW YORK EX REL. WHITNEY *v.* GRAVES ET AL.

No. 218. Argued December 18, 1936.—Decided January 4, 1937.

*Mr. Marcien Jenckes,* with whom *Messrs. John L. Hall, Claude R. Branch,* and *Richard Wait* were on the brief, for appellant.

368

*Mr. Joseph M. Mesnig,* Assistant Attorney General of New York, with whom *Mr. John J. Bennett, Jr.,* Attorney General, and *Mr. Henry Epstein,* Solicitor General, were on the brief, for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The question here presented relates to the constitutional validity of a tax imposed by the State of New York upon the profits realized by a non-resident upon the sale of a right appurtenant to membership in the New York Stock Exchange.

The relator, C. Handasyde Whitney, is a resident of the Commonwealth of Massachusetts and a member of a firm doing business in Boston. He and his copartners own a membership in the New York Stock Exchange. The membership stands in the relator's name. In 1929, by virtue of an increase in the number of members of the Exchange, each member became entitled to a "right" to one-fourth of a new membership. The relator sold that right for $108,000. The Tax Commission of New York, under §§ 351 and 351–a of the Tax Law of that State, assessed a tax upon the profits derived from the sale, which were calculated at the difference between original cost, together with contributions paid in the form of dues, and the proceeds of the sale. The tax was paid under protest and the relator sought revision under the pertinent provision of the state law. The Tax Commission denied the application. The relator then obtained a writ of certiorari from the state court to review the commission's action and the commission made return embracing the record of its proceedings. In accordance with the state practice, the matter was heard by the Appellate Division of the Supreme Court which sustained the determination of the commission. 246 App. Div. 652; 283 N. Y. S. 219. That ruling was affirmed by the Court of

Appeals, without opinion. Subsequently that court amended its remittitur by reciting that upon the appeal the relator contended that the assessment of the tax under the provisions of the state act "contravenes the Fourteenth Amendment of the Federal Constitution as an extraterritorial tax, and such question was presented and necessarily passed upon but not sustained by the court." 271 N. Y. 594, 3 N. E. (2d) 201; 271 N. Y. 618, 3 N. E. (2d) 213. The case comes here on appeal.

Aside from a brief statement of facts, the state courts have not aided us by a discussion or analysis of the nature of the right involved or the grounds for the assertion of the authority to lay the tax. From the record it appears that the New York Stock Exchange is an unincorporated voluntary association, limited as to membership and governed by its own constitution, by-laws and rules; that it holds the beneficial ownership of the entire capital stock of a New York corporation which owns the building in which the business of the Exchange is transacted, with the land upon which it stands, situated in the city of New York; that membership or seat in the Exchange carries with it valuable privileges and has a market value for the purpose of sale; that the Exchange is supported by dues and charges paid by its members and that contributions are also made to a "gratuity fund" which is in substance an insurance fund for the benefit of the widow and descendants of deceased members; that membership is evidenced by a certificate in the form of a letter signed by the secretary of the Exchange; that the membership can be transferred only through the Exchange and with its approval; that a member may personally buy or sell only in the Exchange building; that a member may buy or sell for the account of other members at a commission substantially less than that charged to a nonmember; and that such rights and privileges are valuable and are exer-

cisable only in transactions conducted at the Exchange building in the city of New York.[1]

The relator, in challenging the jurisdiction of the State of New York to lay the tax, stresses the points that the relator and his copartners have always been domiciled in Massachusetts; that they have never had an office or abode in New York and have never carried on business there; that while they advertise themselves in Boston as members of the New York Stock Exchange and accept orders from customers at their Boston office for execution on the New York Stock Exchange, none of that business is conducted by the relator or his copartners on the floor of that Exchange; that they do not buy and sell securities on the Exchange for their firm account; that orders requiring execution on the Exchange are telegraphed to members of the Exchange who have business offices in New York and who execute their orders on the Exchange in their own names, acting as correspondents, lending money on the security of the stock purchased and other collateral delivered to them. This business of relator's firm in 1929 involved approximately $150,000,000 worth of securities. And it appears that by reason of relator's membership in the Exchange, his firm was able to have their New York correspondents execute orders at forty per cent. of the commission fixed for non-members. Relator's firm charges its customers the fixed minimum commissions which they would have to pay any stock exchange house, and these commissions are divided with their New York correspondents by mutual agreement.

The relator's argument is that the membership in the Exchange is intangible personal property, that as a gen-

---

[1] See *Belton* v. *Hatch*, 109 N. Y. 593, 595, 596; 17 N. E. 225; *People ex rel. Lemmon* v. *Feitner*, 167 N. Y. 1, 4, 11, 13; 60 N. E. 265; Meyer, "The Law of Stock Brokers and Stock Exchanges," pp. 13–16, 75–79.

eral rule property of that sort is taxable only at the domicile of the owner, and that unless the membership has a "business situs" in New York it is not taxable there. *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 213; *Beidler* v. *South Carolina Tax Comm'n,* 282 U. S. 1, 8; *First National Bank* v. *Maine,* 284 U. S. 312, 329, 331; *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193, 209–211. He contends that the membership cannot be said to have a business situs in New York because he and his copartners reside and transact all their business in Massachusetts.

We think that the argument fails to give adequate consideration to the nature and incidents of the membership. When we speak of a "business situs" of intangible property in the taxing State we are indulging in a metaphor. We express the idea of localization by virtue of the attributes of the intangible right in relation to the conduct of affairs at a particular place. The right may grow out of the actual transactions of a localized business or the right may be identified with a particular place because the exercise of the right is fixed exclusively or dominantly at that place. In the latter case the localization for the purpose of transacting business may constitute a business situs quite as clearly as the conduct of the business itself.

Here, we are dealing with an intangible right of a peculiar nature. It embraces the privilege of a member to transact business on the Exchange as well as a valuable right of property which is the subject of transfer with the approval of the Exchange and may survive resignation, expulsion or death.[2] In both aspects the right is held and can be exercised only in subjection to the constitution, by-laws and rules of the Exchange. The Exchange is a market place. The privilege which inheres in the mem-

---

[2] *Weston* v. *Ives,* 97 N. Y. 222; *Belton* v. *Hatch,* 109 N. Y. 593; 17 N. E. 225; *Matter of Grant,* 132 App. Div. 739, 742; 116 N. Y. S. 767, 1152; *Hyde* v. *Woods,* 94 U. S. 523; *Sparhawk* v. *Yerkes,* 142 U. S. 1, 12; Meyer, *op. cit.,* pp. 115–117.

bership is the right to conduct transactions at that market place. That privilege of conducting the business of the buying and selling of securities on the floor of the Exchange is the dominant feature of the membership or "seat." Its very nature localizes it at the Exchange. It is a privilege which can be exercised nowhere else. The nature of that right is not altered by the failure to exercise it. Wherever the owner may reside he must go to the Exchange to exercise his privilege to trade upon its floor. If he prefers to have his customers' orders executed through other members, still they must execute these orders on the Exchange under its rules. Such orders are executed on his behalf, and by virtue of his membership and of the execution of his orders upon the Exchange he becomes entitled to the concession in commissions for which the rules provide.

Our decisions do not support the relator's contention. In *Rogers* v. *Hennepin County*, 240 U. S. 184, the question related to memberships in the Chamber of Commerce of the city of Minneapolis. It was urged on behalf of the citizens of other States that their memberships were intangible rights held at their domicile. But we decided that they were taxable in Minnesota. While it was said that the memberships represented rights and privileges which appeared to have been actually exercised at the Exchange in Minneapolis, the underlying consideration was the nature of the right and privilege which made those transactions possible. In *Citizens National Bank* v. *Durr*, 257 U. S. 99, a membership in the New York Stock Exchange, owned by a resident of Ohio, was held to be subject to taxation at his domicile. But the Court was careful not to question the jurisdiction of the State of New York to tax "the membership privileges exercisable locally" in that State (*Id.*, pp. 109, 111) and what the Court said with respect to double taxation must be read in the light of the decisions in *Farmers Loan & Trust Co.* v. *Minne-*

*sota, supra,* and later cases upon that point. See *Wheeling Steel Corp.* v. *Fox, supra.*

We think that the dominant attribute of relator's membership in the New York Stock Exchange so links it to the situs of the Exchange as to localize it at that place and hence to bring it within the taxing power of New York. Accordingly we hold that in laying the tax upon the profits derived by the relator from the sale of the right appurtenant to his membership the State did not exceed the bounds of its jurisdiction. The judgment is

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.